UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DAVID A. MASON *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>) Civil No. 03-199-B-MJK<br>MAINE DEPARTMENT OF )<br>CORRECTIONS, *et al.*, )<br>)<br>Defendants. ) | |

### MEMORANDUM OF DECISION[1] ON PLAINTIFFS' APPLICATION FOR AN ATTORNEY FEES AWARD

Currently pending is the plaintiffs' motion for an award of statutory attorney fees (Docket No. 88) pursuant to the fee-shifting provision of the Rehabilitation Act, 29 U.S.C. § 794a(b). The plaintiffs' application requests $102,270.00 as a reasonable attorney fee. The defendants concede in their opposition memorandum that the plaintiffs are entitled to a reasonable award as prevailing parties under the Rehabilitation Act, but take issue with the hourly rate requested and with a collection of itemized billings. (Opp'n to Pls.' Application at 4, Docket No. 94.) I grant the application, but in a reduced amount.

The parties are in agreement that the amount of the attorney fee award should be determined using the lodestar methodology, i.e., by multiplying the number of hours productively expended by counsel by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Typically, a court proceeds to compute the lodestar amount by ascertaining the time counsel actually spent on the case "and then subtracting from that figure

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

hours which were duplicative, unproductive, excessive, or otherwise unnecessary." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). The court then applies hourly rates to the constituent tasks, taking into account the "prevailing rates in the community for comparably qualified attorneys." United States v. Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988). Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in order to reflect the plaintiffs' "degree of success in the litigation." Chaloult v. Interstate Brands Corp., 296 F. Supp. 2d 2, 4 (D. Me. 2004); see also Blum v. Stenson, 465 U.S. 886, 897 (1984); Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). The plaintiffs bear the burden of establishing the reasonableness of the rates and hours submitted in their application for fees. Chaloult, 296 F. Supp. 2d at 4. With these parameters in mind, I set about considering the reasonableness of the hours and rates requested by the plaintiffs.

**B.     Reasonable Hours**

The plaintiffs assert that Attorneys Gause and Hansen expended 473 hours and 37.3 hours, respectively, on legal tasks that should be compensated at a full hourly rate, plus some 10.5 hours of combined travel time for both attorneys. The defendants challenge a substantial portion of the hours billed. I address those challenges by category.

*1.     Unrelated matters and unsuccessful claims*

The defendants argue that billings between January 13, 2003, and May 19, 2003, clearly relate to the prior state court action rather than the instant litigation.[2] In addition, they claim that numerous billings relate to claims that were dismissed prior to trial, including several hours expended in opposition to the defendants' summary judgment motion. This litigation began as a challenge to several alleged violations of the Eighth Amendment and the Rehabilitation Act and was gradually whittled down to a narrow set of plaints by the time of trial. In particular, the

---

[2]     The plaintiffs filed their claim in this court on November 17, 2003.

Rehabilitation Act claims went from some three alleged violations for plaintiff Mason and six alleged violations for plaintiff NaPier, to two alleged violations for Mason and three or four for NaPier. At trial, the Eighth Amendment claims failed altogether. I consider this gradual whittling of the case, often pursuant to stipulation, to justify a 50 per cent reduction in the pre-summary judgment billings that appear to group all pre-dismissal or pre-trial claims into one billing and a total elimination of entries specifically tied to the Eighth Amendment claims, the aborted demands for injunctive relief and the efforts made to appoint Cathy Mason as the personal representative of her deceased husband's estate. With respect to the 50 per cent reduction, I have in mind the 8.6 hours spent in February and April 2003 researching the various causes of action; 15.4 hours spent preparing the complaint in November 2003; 2 hours spent preparing discovery requests in December 2003; 11.6 hours spent on unspecified "legal research," and a hodge-podge of other tasks performed on January 9, 16 and 21, 2004, without proper individualization of the disparate tasks in question; 5 hours spent on discovery request preparation in February 2004; and 18.5 hours spent in June and July of 2004 on deposition-related tasks such as legal research and preparation, the depositions themselves and "review . . . to determine if further discovery is necessary." These several entries total 61.1 hours, which I reduce by 30.5 hours. With respect to hours spent researching the Eighth Amendment, I have in mind the entries made October 28, 2003, and October 29, 2003, for a further reduction of 7.4 hours. With respect to the request for injunctive relief, I further decrease the hours requested by 0.2 hours. With respect to the appointment of Cathy Mason, there are a further 3.7 hours that I will deduct that were billed on the dates indicated by the defendants in their opposition.

   The hours Attorney Gause spent in opposing the defendants' summary judgment motion should also be reduced by some figure to reflect time spent on unsuccessful claims. I note that

the plaintiffs have already discounted all time spent opposing the motion to the extent it targeted certain of Mason's claims.  I count some 32.7 hours expended on reviewing the defendants papers, preparing NaPier's opposition and reviewing the Court's ruling, all billed between August 17, 2004, and October 1, 2004.  The majority of the plaintiffs' summary judgment legal memorandum pertained to NaPier's unsuccessful Eighth Amendment claim.  I reduce the hours expended on the summary judgment motion by 16.7 hours to account for this fact.  In all, I remove 56.1 hours from the request on account of hours spent on unrelated matters and unsuccessful components of the plaintiffs' claims.

    *2.*      *Excessive hours*

The defendants assert that Attorney Gause spent excessive time on certain tasks such as amending the complaint.  The plaintiffs agree to a 3.4 hour reduction, but I decline to reduce the award because I conclude that the substantial reductions I have already made to the hours billed by Attorney Gause sufficiently account for these few hours.  The defendants also criticize the billing of 114.5 hours for trial preparation as excessive and as insufficiently particularized as to what tasks were performed.  I count some 82.9 hours billed to trial preparation, not including 49 hours billed to "trial preparation; attend trial" on the three days the trial was in session in May 2005.  According to the defendants, these hours are excessive in light of the limited number of issues and witnesses presented at the trial.  The plaintiffs argue that Attorney Gause's preparation was complicated because there were two plaintiffs whose claims arose from different facts, the "legal standards were complex and amorphous," and the defendants refused to enter into many stipulations proposed by the plaintiffs and made very general references to the exhibits and witnesses they intended to present.  (App. for Att'y Fees at 5-6.)  Based on my understanding of this case, which was significantly narrowed in scope after the summary judgment stage, largely

by agreement, I do not believe that the defendants unnecessarily complicated matters and I feel that 82.9 hours of pretrial preparation is excessive in view of the factual and legal issues involved. In addition, I consider the indefinite reference to "trial preparation" to be inadequate. It is reasonable to expect counsel to itemize billable work by specific task. Of the 131.9 hours billed to "trial preparation" and "trial preparation; attend trial" I will allow 94, although even that number rests at the outer limits of reasonableness. Therefore, an additional 37.9 hours are disallowed.

### 3. *Clerical/paralegal tasks*

The defendants complain that a number of entries relate only to clerical tasks, such as making phone calls to schedule depositions. Of the several entries identified by the defendants, I count some 7.6 hours. I will take away 0.5 hours of this time for a double billing on October 27, 2003, and another 3 hours to account for time expended on tasks such as attempting to contact clients and opposing counsel, and calendaring or scheduling tasks, that would not justify billing a client at the considerable rate of $185 per hour. This totals an additional disallowance of 3.5 hours.

### 4. *Inadequate documentation*

In this category the defendants point to numerous billings itemized simply as "file review," or some similarly vague entry. Of these billings I compute some 12.9 hours. The plaintiffs indicate that they will concede 2.4 hours. One of the concessions, concerning the billing for January 9, 2004 (1.8 hours), I have already compromised by 50 percent in the context of section 1 above. But I will reduce the award by a further 0.6 hours pursuant to the concession for the November 24, 2004, billing. In light of the numerous reductions already made to the plaintiffs application, I am not concerned that roughly 12 hours were billed for routine file

review in connection with the numerous tasks Attorney Gause was required to perform for his clients over the course of this litigation. Accordingly, 0.6 hours are deducted on account of inadequate documentation.

### 5. *Post-trial issues*

The plaintiffs concede a further 4.8 hours spent on "post-trial issues" and "appeal issues."

### 6. *Service-related billings*

Finally, the defendants take issue with time billed by Attorney Gause for issues related to service of the complaint. The targeted entries add up to 6.2 hours. I agree with the plaintiffs that "effectuating service properly is an essential part of a lawyers job" and, therefore, do not discount time spent researching the proper means of serving the state defendants. I will, however, take away 2 hours to account for the fact that the "non-core," clerical aspects of the phone calls and document preparation tasks should not be billed at the full rate. See Guckenberger v. Boston Univ., 8 F. Supp. 2d 91, 101-102 (D. Mass. 1998)

### 7. *Time billed by junior attorney*

The defendants assert that Attorney Hansen's billing for 24 hours of attendance at the trial should be entirely disregarded. They assert that Attorney Hansen's attendance at the trial was more for the purpose of his education and development as a trial lawyer than for the purpose of materially aiding Attorney Gause. From a paying client's perspective, I think this assertion is generally accurate. However, I do not think that Attorney Hansen's attendance was entirely unproductive and believe that his assistance with exhibits and other trial-related tasks would justify billing a paying client for 10 hours at the $100 per hour rate I have assigned for him (or perhaps more hours at a further reduced rate, see Guckenberger, 8 F. Supp. 2d at 101-102). Although this effectively reduces Attorney Hansen's rate to a paralegal level, there are obvious

advantages to having assistance from a licensed attorney who is apt to have greater comprehension of the legal and procedural issues that arise during trial. Accordingly, I disallow 14 hours that were billed for Mr. Hansen's trial attendance.

**B.    Reasonable Rate**

In determining a reasonable hourly rate, the Court "considers the prevailing rates in the community for attorneys with similar experience and qualifications to those for whom fees have been requested." Okot v. Conicelli, 180 F. Supp. 2d 238, 242 (D. Me. 2002); accord Quint v. A.E. Staley Mfg. Co., 245 F. Supp. 2d 162, 176 (D. Me. 2003). The plaintiffs have requested that Attorney John Gause receive an hourly rate of $205 and that his assistant attorney, Chad Hansen, receive an hourly rate of $150. In support of the $205 rate, the plaintiffs have submitted affidavits sworn to by Attorneys Arthur Grief and David Webbert, both experienced civil rights trial attorneys who commonly appear in this Court and whose work is well known to me. Attorney Grief avers that his current hourly rate for such work is $225, that he is familiar with Attorney Gause's reputation and skill, and that he considers the plaintiffs' request for an award of a $205 hourly rate to be within the prevailing market rate set by comparable attorneys engaged in comparable work. Attorney Webbert avers that his customary rate is $260 and, like Attorney Grief, that he is familiar with Attorney Gause's reputation, work quality and skill, and that he considers a $205 hourly rate to be within the prevailing market range.[3] Both attorneys have been

---

[3]    In 2003, Attorney Webbert was compensated at a rate of $195 and Attorney Grief at a rate of $150 in an employment discrimination suit they worked on in this Court. See Quint, 245 F. Supp. 2d at 171, 179-80. As of that date, both had significant experience. The fees they sought at those rates were for work performed in 1999-2000 time frame. Attorney Gause's work on this case began in the 2000 time frame according to the defendants. Gause avers that all of the hours for which he now seeks compensation pertain only to this case and he has not billed for any time expended on the two earlier aborted cases based upon the same facts. The events at issue in this case occurred as early as 1998. I cannot ignore the fact that Gause must have had more than a passing familiarity with the facts at issue before this case was filed. The age of this case on this docket is not attributable to its complexity, but rather, at least in part, to a hiatus in the litigation obtained at the request of NaPier because of his request for a continuance during the winter months when he was not in the State of Maine. (See Docket No. 42, September 27, 2004 unopposed motion to continue trial until after May 1, 2005).

7

practicing law for at least nine years longer than attorney Gause. As for Attorney Hansen, he has been a licensed attorney since only 2001 and it appears that he has focused his practice on disability rights since 2004. The plaintiffs have not introduced any evidence in support of the $150 hourly rate requested for Attorney Hansen other than an assertion by Attorney Gause that he considers a $150 hourly rate to match the prevailing rate in Bangor and Augusta for comparably experienced associates, based on Attorney Gause's familiarity with the prevailing rates of his legal community. In opposition to the $205 rate requested for Attorney Gause, the defendants have introduced evidence that clients represented by other, more senior attorneys working in Attorney Gause's office, The Disability Rights Center, requested hourly rates for their attorneys of $175, circa 2003, in relation to more sophisticated class action civil rights litigation. The defendants argue that it would be unreasonable for the Court to assign a higher rate to Attorney Gause because he is junior to those attorneys and this case was less demanding. In light of these presentations and my independent knowledge of rates awarded in similar attorney fee applications filed in this Court, I will assign a lodestar rate of $185 per hour for work performed by Attorney Gause and $100 per hour for the work performed by Attorney Hansen.

**C.   Total Attorney Fee Award**

Taking into account all of the foregoing reductions, I calculate 347.6 hours for Attorney Gause at $185 per hour, and 23.3 hours for Attorney Hansen at an hourly rate of $100. In addition there are 10.5 hours of travel between the two attorneys, for which I will award compensation at a $20 per hour rate. Accordingly, the attorney fee award is as follows:

| | | |
|---|---|---|
| Attorney Gause | 347.6 hours at $185 per hour = | $ 64,306.00 |
| Attorney Hansen | 23.3 hours at $100 per hour = | 2,330.00 |
| Travel | 10.5 hours at $20 per hour = | $    210.00 |
| **Total Attorney Fee Award** | | **$ 66,846.00** |

8

**D.     Litigation Costs**

In addition to the lodestar computation, the defendants challenge certain aspects of the plaintiffs' request for litigation costs (as opposed to Court costs).  The plaintiffs concede $147.98 in costs, but do not concede the defendants' challenge to their request for expert witness costs.  With respect to that expense, the plaintiffs ask that the defendants be ordered to pay $930 incurred in connection with the testimony of plaintiffs' expert witness.  According to the defendants, such costs are limited by 28 U.S.C. § 1821(b) to $40 per day of attendance at trial and the witness in question appeared on only one day.  The defendants rely on <u>West Virginia University Hospitals, Inc. v. Casey</u>, 499 U.S. 83 (1991).  I agree with the defendants that the plaintiffs are not entitled to an award that includes expert witness fees.  In <u>Casey</u> the Supreme Court held that 42 U.S.C. § 1988 did not authorize a fee-shifting award for expert fees and, absent such a statutory authorization, 28 U.S.C. § 1821 imposed a ceiling on the amount of fees that could be shifted for an expert witness's attendance at trial.  499 U.S. at 102.  The plaintiffs observe that § 1988 has since been amended to provide an explicit authorization for the shifting of expert witness fees, citing 42 U.S.C. § 1988(c).  However, that provision authorizes an award of expert fees "in any action or proceeding to enforce a provision of section 1981 or 1981a."  42 U.S.C. § 1988(c).  The plaintiffs' Rehabilitation Act claims do not fall under either section and, therefore, <u>Casey</u> still cautions that a court may not depart from § 1821 without clear authorization from Congress.  The plaintiffs cite <u>Murphy v. Arlington Central School District Board</u>, 402 F.3d 332 (2d Cir. 2005), for the proposition that Casey has been compromised, but that case deals explicitly with fee shifting under the IDEA, not the Rehabilitation Act, and also purports to divine congressional intent based on, among other things, the legislative history of the IDEA, which is not involved in this case.  <u>See</u> <u>id.</u> at 336-38.  The provision that pertains to fee

shifting under the Rehabilitation Act, 29 U.S.C. § 794a(b), does not expressly authorize the shifting of expert fees. Accordingly, I disallow $930 of the expert fees challenged by the defendants,[4] in addition to the $147.98 conceded by the plaintiffs. This leaves a cost award of $ 2,478.90 for the Clerk to consider.

## Conclusion

For the reasons set forth above, it is **ORDERED** that on the plaintiffs' Application for Attorney's Fees (Docket No. 88), the plaintiffs are awarded a total of $ 66,846.00. It is further **ORDERED** that $1,077.98 currently requested in the plaintiffs' Bill of Costs is to be **DISALLOWED**. (Id., Ex. 2).

*So Ordered*

Dated September 9, 2005

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

---

[4] I would substantially reduce the expert fee, in any event, in view of the fact that, among other things, the lion's share ($540) of the expert's "bill for court testimony" is for three hours of travel time. If the plaintiffs wish to obtain expert witness attendance and mileage costs under § 1821, they may submit an amended bill of costs within 7 days of this order.

10